**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**VINCENT LARRY PHILLIPS, and**<br>**VINCENT MICHAEL PHILLIPS,**<br><br>**Defendants.** | **Criminal No. 25-CR-366 (AHA)** |

**GOVERNMENT'S *EX PARTE* MOTION FOR REVOCATION OF**
**DEFENDANT VINCENT LARRY PHILLIPS'S RELEASE AND**
**REQUEST THAT THE COURT ISSUE A BENCH WARRANT**

The United States of America, by and through its undersigned counsel, respectfully requests that the Court issue a bench warrant for defendant Vincent Larry Phillips ("Phillips") based on information recently learned by the government, which establishes that Phillips violated his conditions of release by engaging in additional criminal conduct. The government also requests that the Court temporarily seal the motion, proposed order, and proposed bench warrant. After the defendant is arrested, the government requests that the Court hold a hearing pursuant to 18 U.S.C. § 3148(b), formally revoke his conditions of release, and order him detained pending trial.

**BACKGROUND**

**I.  History of False Tax Return Preparation**

Phillips has operated a tax preparation business in Washington, D.C. since the 1990s. In 2010, he pleaded guilty to conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and to preparing and filing false tax returns for his clients, in violation of 26 U.S.C. § 7206(2). *See* Plea Agreement, *United States v. Phillips*, Dkt. 5, No. 10-CR-0249 (Sept. 28, 2010). Phillips's scheme had been to prepare false Forms Schedule C, Profit or Loss from Business, that claimed fraudulent Schedule C business losses that falsely reduced his clients' taxable income and thus

taxes due. *See* Statement of Offense 2-3, Dkt. 6, *Phillips*, No. 10-CR-0249 (Sept. 28, 2010). At times, Phillips would fraudulently claim "a non-existent Schedule C business" on clients' returns without their knowledge. *Id.* at 4.

In 2011, citing his conviction, the IRS expelled him from the e-file program allowing individuals and businesses to electronically file tax returns using an Electronic Filing Identification Number ("EFIN"). But that did not stop Phillips.

## II.  The Charges

In November 2025, a grand jury in the District of Columbia charged Phillips with having used the name and Social Security Number of a female associate to obtain a new EFIN—and continue operating his tax preparation business—filing hundreds of false returns along the way— from 2011 through 2022. *See* Indictment ¶¶ 12-21, Dkt. 1. He brought his son, Vincent Michael Phillips ("Phillips Junior") into the family business, and the two are alleged to have conspired between 2018 and 2022 to file false returns for clients of the tax preparation business. *Id.* ¶¶ 22-30. Phillips and Phillips Junior are alleged to have put information supporting false Residential Energy Credits (to which the clients were not entitled)—typically non-existent expenses for non-existent geothermal heat pumps—and false Schedule C business losses (which the clients did not have) on returns to fraudulently reduce clients' taxes due and/or inflate refunds paid by the U.S. Treasury. *E.g.*, *id.* ¶¶ 24-25, 29, 32.

## III. Conditions of Release

At Phillips's initial appearance on December 18, 2025, Magistrate Judge G. Michael Harvey entered an Order Setting Conditions of Release and releasing Phillips to Pretrial Services. As is standard, the Order mandated that "[t]he defendant must not violate federal, state, or local law while on release." Order 1, Dkt 7. The conditions in the Order—which Phillips acknowledged

on the record—also included the condition that he "[n]ot prepare any tax returns for any persons other than [himself]." *Id.* at 3.

## IV. Criminal Conduct Committed During Release

Despite a court order prohibiting him from preparing tax returns for others and from committing any crimes, Phillips did both—and then persisted even after the government notified his counsel in an effort to halt his misconduct.

In early March 2026, Internal Revenue Service–Criminal Investigation ("IRS-CI") discovered that three electronic devices had been used between late January and early March 2026 to file more than 90 individual income tax returns, largely for former clients of Phillips and Tax Express. The vast majority of the returns sought tax refunds and used a Refund Anticipation Loan ("RAL"), a financial instrument that allows taxpayers to receive the anticipated refunds up front— and from which Phillips had previously deducted his tax preparation fee, allowing his fee to be paid from the refund. Dozens of the returns reported Schedule C businesses, with most reporting net business losses and identifying the business merely as "consultant." This is a continuation of the pattern of the criminal conduct charged in the indictment. *See* Indictment ¶¶ 22-24 (describing the use of RALs, and preparation of tax returns with false Schedules C). In addition, the returns were overwhelmingly filed from Washington, D.C., using Verizon Fios internet, which matched the location of Tax Express and its historic internet provider. Moreover, despite being filed using the same three devices and internet provider, the returns did not list any return preparer or tax preparation firm, instead indicating the returns had been prepared by the taxpayers themselves.

Based on the large number of returns filed by the three devices, the high percentage of refunds claimed, the frequency of Schedule C business losses, the use of RALs and Verizon internet, and the returns' omission of a return preparer, IRS-CI suspected Phillips had continued

to prepare returns for clients but was omitting his name and business from the returns to conceal his activity.

In early March, IRS-CI then interviewed five of the taxpayers, who all confirmed this suspicion. The taxpayers all stated that they had their returns prepared at Tax Express's office, 1206 Pennsylvania Avenue Southeast, Washington, DC. Four explicitly identified Phillips as the person with whom they met at the office, and the fifth identified a person matching Phillips's description.

Two of the clients ("Client A" and "Client B"), a married couple, stated that their returns were false. These returns claimed thousands of dollars in net Schedule C business losses for purported "consultant" and "trash consultant" businesses, and ultimately sought refunds of $900 and $1,221, respectively. However, the clients told IRS-CI that they did not have these businesses, had not given any information to anyone at Tax Express about any businesses, and did not even know that Schedule C businesses had been reported on their returns. In sum, unbeknownst to the clients, Phillips prepared and filed false tax returns on their behalf.

Based on this information and the interviews, on March 9, 2026, the government notified defense counsel for Phillips that his client was still operating a tax preparation business despite being banned from doing so by his conditions of release. The following day, March 10, the government further discussed the issue with Phillips's defense counsel and provided him with a spreadsheet of the apparent false returns as well as memoranda of interviews with the five clients. Defense counsel represented that his client may have misunderstood the conditions of release and told government counsel that he would clarify with Phillips that the conditions prohibited him and Tax Express from preparing returns for others. That same day, the government notified Pretrial Services by email that Phillips had violated his conditions of release. At the time, the government

4

expected to move to modify Phillips' conditions of release to try to ensure he would not prepare more tax returns.

IRS-CI discovered, however, that after the government spoke with Phillips's counsel on March 10, Phillips did *not* stop preparing tax returns—or even stop preparing false ones. Instead, later that day, Phillips used a new device to file six new returns. In total, between March 10 and April 1, 2026, he appears to have filed 43 tax returns using two new devices that he had not used before March 10. Three clients, whose tax returns were filed on March 11 and 12 (after the government notified Phillips' counsel), all stated that they met with Phillips at the Tax Express office.

One of the clients, whose return sought a Refund Anticipation Loan, told IRS-CI that she did not know a RAL had been applied for, had not consented to seeking a RAL, and had not discussed it with Phillips.

The 2025 income tax return for another of the clients ("Client C") listed a Schedule C "consultant" business with $4,722 in net losses. However, Client C told IRS-CI that the return was false: she did not work as a consultant, did not own such a business, and did not provide any information about such a business to anyone at Tax Express.

## LEGAL STANDARD

A defendant "who has violated a condition of release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). D.C. Circuit precedent permits the Government to proceed by way of proffer at a detention hearing. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996); *see also United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) ("[P]roffers are permissible both in the bail determination and bail revocation contexts.").

Section 3148(b) directs a judicial officer to revoke a defendant's release and order detention if, after a hearing, the judicial officer:

(1) finds that there is –

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

(B) clear and convincing evidence that the person has violated any other condition of release; and

(2) finds that –

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

(B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b); *see, e.g.*, *United States v. Addison*, 984 F. Supp. 1, 2 (D.D.C. 1997) (ordering defendant's detention based on clear and convincing evidence that he had violated a condition of release). That section also provides:

If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.

*Id.*

The Bail Reform Act requires the judicial officer to assess four factors, as described below, before releasing or detaining a defendant. 18 U.S.C. § 3142(g). The Court shall "take into account the available information concerning "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). A defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure

the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).

## ARGUMENT

Probable cause exists to believe that Phillips has committed multiple felonies while on release. Thus, a rebuttable presumption applies that he should be detained pending trial. All of the § 3142(g) factors favor detention. And Phillips's conduct has made imminently clear that he will not abide by his conditions of release.

## I. There is Probable Cause to Believe that the Defendant Violated his Conditions of Release by Committing Multiple Felonies

By preparing false tax returns with fraudulent Schedules C for Clients A, B, and C, Phillips has committed three more felonies: aiding and assisting the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). These crimes are as blatant as they are straightforward.

Section 7206(2) requires that (1) the defendant aided or assisted in the preparation of a document in connection with a matter arising under the internal revenue laws, (2) the document was false as to a material matter, and (3) the defendant acted willfully. 26 U.S.C. § 7206(2); *e.g.*, *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996) (listing elements); *United States v. Klausner*, 80 F.3d 55, 59 (2d Cir. 1996) (same); *United States v. McLain*, 646 F.3d 599, 604 (8th Cir. 2011) (same). All elements are met.

First, Clients A and C explicitly identified Phillips as the man with whom they met at Tax Express. Client B—the husband of Client A—did not identify Phillips by name but his wife did, they went to Tax Express together, and he described a person matching Phillips's physical appearance: a slender, bald, black man more than 50 years old. Phillips met with the clients, received their information, and prepared their returns.

Second, the returns were false as to material matters: each reported false Schedule C

businesses that never existed, and deducted thousands of dollars in net business losses that never occurred. Indeed, all three clients confirmed they did not own or operate the business listed, and had not provided Phillips with any information about such businesses. The false Schedule C losses, in turn, flowed through to their Forms 1040 to reduce their total income and, thus, their total taxes due. These falsities resulted in Clients A and B receiving refunds of $900 and $1,221, respectively, and resulted in Client C owing far less in taxes. Thus, they were material. *See Aramony*, 88 F.3d at 1384 (noting that an item is material if it must be reported for the taxpayer to correctly compute his taxes due, and does not depend on the "amount" of any resulting unpaid tax); *Baker v. United States*, 401 F.2d 958, 987 (D.C. Cir. 1968) (concluding "a false statement may be 'material' notwithstanding the lack of tax consequences" and rejecting defendant's argument that falsity could not be material because it was a "wash" transaction with "no tax consequences").

Third, Phillips acted willfully. Willfulness is the "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 200-01 (1991). Phillips previously pleaded guilty to willfully preparing false returns in violation of § 7206(2). He was under indictment for this same crime *when he prepared the instant false returns*. He fabricated the Schedules C out of thin air, with zero information from the three clients. Phillips knew he had an obligation not to prepare false tax returns but he did so nonetheless.

In sum, Phillips willfully prepared and filed three materially false 2025 tax returns on behalf of clients while on pretrial release, in violation of § 7206(2). He did so despite having previously pleaded guilty to violating § 7206(2), having been expelled from the IRS e-file program, having been indicted for *again* violating § 7206(2), and then having been ordered not to prepare returns as a condition of his pretrial release. With each false filing, Phillips committed a federal crime. Thus, the rebuttable presumption applies that no condition or combination of

conditions will assure Phillips does not pose a danger to the community. 18 U.S.C. § 3148(b).[1]

## II. All Statutory Factors Favor Detention

Under § 3148(b), a defendant must be detained where he is "unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b). Here, all four § 3142(g) factors weigh heavily in favor of detention—and demonstrate why Phillips cannot be trusted to abide by his conditions of release.

First, the nature and circumstances of the offenses charged support detention. The Indictment alleges Phillips stole an associate's means of identification in order to acquire an EFIN in her name, and then began using that EFIN to file hundreds of returns shortly after he pleaded guilty to preparing false returns and the IRS expelled from the e-file program. He then perpetrated a multi-year conspiracy to defraud the IRS by filing false tax returns claiming, among other things, thousands of dollars in false Residential Energy Credits and Schedule C business losses. Taken as a whole, the allegations show Phillips is a longstanding recidivist undeterred by federal felony convictions and unimpeded by administrative efforts to prevent him from filing false returns.

Second, the weight of the evidence is strong. The Indictment alleges Phillips and Phillips Junior prepared consistently false returns for eight different clients and two undercover agents, with a glaring pattern of false Residential Energy Credits reported on the same clients' returns year after year. That the defendants simultaneously prepared similarly false returns, listing non-existent

---

[1] These same acts—as well as the more than 130 other tax returns Phillips appears to have filed in the past few months—also provide clear and convincing evidence that Phillips has violated the condition of release mandating that he "[n]ot prepare any tax returns for any persons other than" himself. Order 3; *see* 18 U.S.C. § 3148(b)(1(B). The client interviews reinforce that Phillips himself met with each client and oversaw the preparation of their returns. His decision to file more than 40 additional returns *after* the government notified his defense counsel about his apparent violations further underscores the extent of his violations, while his decision to file these additional with new devices demonstrates that he was acutely aware of the condition of release—and wanted to conceal his further violations of it.

geothermal heat pump costs, for two undercover agents reinforces the depth of their conspiracy and Phillips' culpability. *See* Indictment ¶ 25. This robust evidence weighs in favor of detention.

Third, Phillips's history and characteristics strongly weigh in favor of detention. To start, Phillips previously pleaded guilty to violating both § 371 and § 7206(2). His decision to fraudulently obtain a new EFIN and perpetrate a new conspiracy to defraud the IRS by filing false tax returns shows that criminal convictions did not deter him. His preparation of hundreds of returns despite the IRS expelling him from the e-file program shows that administrative interventions did not deter him. Nor did expelling the EFIN that he fraudulently obtained. *See* Indictment ¶ 20. Nor did the instant Indictment. Nor did a condition of release banning him from preparing returns for others. Nor did notifying his counsel and Pretrial Services. Instead, all these efforts appear to have only pushed Phillips toward further concealing his crimes: first by fraudulently obtaining an EFIN, then by preparing returns for clients without listing himself or his business as the preparer, and then by switching to new electronic devices after the government notified his counsel of his violations. Phillips' uninterrupted, decade-long history of criminal conduct strongly supports detention.

Fourth, Phillips has made clear that he represents a persistent threat to the safety of the federal government and his clients, and that detention alone can prevent this danger. He represents a danger to the federal government by preparing and filing false tax returns that steal from the federal fisc. He represents a serious financial threat to his own clients because filing false tax returns on their behalf can expose them to substantial tax penalties and interest—as well as costly audits—when the IRS attempts to recoup the refunds that he falsely triggered on their behalf. Thus, there is a serious risk to the community if Phillips remains on release pending trial.

Phillips has made it imminently clear that he will not abide by any condition or combination

of conditions of release. Despite every step taken by the Court, the IRS, and the government, Phillips has continued to perpetrate his tax crimes. After indictment and the Order imposing his conditions of release, Phillips sought to hide his continued misconduct by omitting himself and his business from his clients' returns. After the government discovered his violations and alerted his counsel to them on March 9, 2026, Phillips still did not stop. Instead, the very next day, he switched to preparing tax returns with new devices in an apparent attempt to conceal his continued criminal conduct and violations of his conditions of release. This reinforces that he cannot be trusted to abide by his conditions of release even as he awaits trial for committing felonies under two of the same statutes to which he previously pleaded guilty.

### III. The Court Should Issue a Bench Warrant for Phillips's Arrest and Seal this Motion until the Defendant is Arrested

Because probable cause exists to believe that Phillips committed a felony while on release, there is a rebuttable presumption that he should be detained. *See* 18 U.S.C. § 3148(b)(2). That presumption exists for good reason. Those who commit felonies after they have been released by a court have demonstrated a complete disregard for court orders. The defendant has done exactly that here; accordingly, his bail should be revoked. This Court has the power to issue an arrest warrant for the defendant based on the government's motion that he violated his release conditions. *See* 18 U.S.C. § 3148(b).

The government submits that under *Washington Post v. Robinson*, 935 F.2d 282, 289 n.10 (D.C. Cir. 1991), compelling reasons exist to seal this filing until law enforcement agents arrest the defendant. If the defendant is made aware of this filing prior to his arrest, he may take actions that could endanger the safety of the law enforcement agents who will seek to effectuate his arrest. Moreover, he might flee the jurisdiction or take other actions to avoid apprehension—a substantial risk given his repeated efforts to conceal his pervasive violations of the conditions of release.

Notwithstanding this sealing request, the government seeks permission to share documents with any agencies that can help effectuate the defendant's arrest. The government also requests that this filing and related documents be automatically unsealed after Phillips has been arrested.

## CONCLUSION

Wherefore, the government respectfully requests that the Court issue an arrest warrant for defendant Vincent Larry Phillips and seal this motion, the proposed order, and the arrest warrant until law enforcement effectuates his arrest.

Respectfully submitted,

A. TYSEN DUVA
Assistant Attorney General
Criminal Division

By      /s/ *Emerson Gordon-Marvin*
Emerson Gordon-Marvin
Trial Attorney
Criminal Division—Tax Section
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
(202) 598-7011
Emerson.Gordon-Marvin@usdoj.gov

JEANINE FERRIS PIRRO
United States Attorney

By      /s/ *Sarah Ranney*

Sarah Ranney
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-7051
Sarah.Ranney@usdoj.gov